UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Janet Saunders and
Peter Saunders

    v.                              Civil No. 17-cv-27-JL
                                              Opinion No. 2018 DNH 145

First Magnus Financial Corp., et al.

**OPINION AND ORDER**

Plaintiffs Janet Saunders and Peter Saunders have sued numerous banks, bank officials, attorneys and other individuals and businesses challenging, inter alia, the legitimacy of the promissory note and mortgage executed (or, as they allege, purportedly executed) in 2005 in connection with their purchase of a home in Kingston, NH, the previous year. Their Amended Complaint asserts claims of conversion, unjust enrichment, intentional infliction of emotional distress as well as substantive RICO violations and a RICO[1] conspiracy claim against roughly 50 individual and corporate defendants and 39 "on-defendant parties."

---

[1] The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and 1964.

Before the court are separate motions to dismiss filed by five groups of defendants.[3] After reviewing the parties' submissions and conducting oral argument,[4] the court finds that plaintiffs have failed to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Defendants' motions are therefore granted.

## I. Applicable legal standard

To state a claim for relief and withstand a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015). In ruling on such a motion, the

---

[3] Doc. nos. 88, 96, 109, 110, 111, 119, 130 and 139.

[4] In response to the serial filing of multiple motions to strike pleadings and in an effort to manage its docket, the court prohibited the parties from filing any additional motions, pleadings or notices until after the defendants' motions to dismiss were resolved. See Hearing Notice, Dec. 14, 2017. In an effort to allow the pro se plaintiffs to create the most complete record possible under the circumstances, the court, after oral argument, invited the plaintiffs to submit any additional pleadings they deemed relevant. In response, the plaintiffs filed a "Notice" of various pleadings that: 1) they had not filed pursuant to the court's December 14, 2017, case management order; and 2) they publicly noticed by publication in a local newspaper. (Doc. no 167). Defendants declined the opportunity to respond to any of the plaintiffs' submissions. The court did not docket the 13 pleadings contained in plaintiffs' Notice. See Order (doc. no 168).

court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).

The court "may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice."  Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009) (internal quotations omitted).  The court "need not, however, credit bald assertions, subjective characterizations, optimistic predictions, or problematic suppositions," and "[e]mpirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference."  Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998) (internal quotations omitted).  Guided by these standards, the court turns to the operative Amended Complaint.

## II.  **Factual background**

The court previously found that plaintiffs' 451-page, 881 paragraph Verified Complaint violated Fed. R. Civ. P. 8(a)(2) and ordered plaintiffs to file a Complaint in conformance with

the federal rules.[5]  The plaintiffs did so in a timely manner.[6]
While the latter document is the operative Complaint, the court
has carefully reviewed the plaintiffs' original Complaint (doc.
no. 1) and Verified Complaint in an abundance of caution in
recognition of their pro se status.  Moreover, as indicated in
the opening paragraph of the operative Amended Complaint, the
plaintiffs have incorporated by reference the "rejected"
Verified Complaint.  The court relies on that document, which it
refers to as the "Verified Complaint," for certain background
facts.

The plaintiffs purchased a home in Kingston, New Hampshire,
in 2004.  In 2005, plaintiffs executed a mortgage and note for
$392,000.[7]  Plaintiff Peter Saunders executed the mortgage but
did not sign the note.[8]  The lender was defendant First Magnus
Financial Corp.,[9] while the mortgage was held by Mortgage

---

[5] See Doc. no. 49 (Verified Complaint); doc. no. 56 (order).

[6] Doc. no. 82.

[7] Amended Complaint (doc. no. 82) ¶ 17.

[8] Verified Amended Complaint (doc. no. 49), Exh. 3.

[9] First Magnus is in default. (Doc no. 45).  "However, it has
long been the rule in American law that a fact not controverted
by a party who does not appear, and which is therefore taken as
established against that party, may not be considered
established against a party who does appear and contests it."
Gatchell v. Legend Sports, Inc., No. 98-272-P-H, 1999 WL
33117091, at *3 (D. Me. Apr. 20, 1999) (citing The Mary, 13 U.S.
(9 Cranch) 126, 143 (1815)); Pfanenstiel Architects, Inc. v.

Electronic Registration Systems, Inc. (MERS).[10]  In December

2009, MERS, on the lender's behalf, assigned the mortgage to

Wachovia Bank,[11] which subsequently merged with defendant Wells

Fargo.

---

Chouteau Petroleum Co., 978 F.2d 430, 432 (8th Cir.1992)).
Thus, contrary to plaintiffs' assertion, First Magnus's default
has no bearing on the motions filed by the remaining defendants.
Moreover, "[s]everal courts have held that where 'a defending
party establishes that plaintiff has no cause of action . . .
this defense generally inures also to the benefit of a
defaulting defendant.'" Lewis v. Lynn, 236 F.3d 766, 768 (5th
Cir. 2001) (quoting United States v. Peerless Ins. Co., 374 F.2d
942, 945 (4th Cir. 1967)).  Accordingly, if the non-defaulting
defendants' motions to dismiss are granted, the appropriate
course is for the court to enter judgment in favor of the
defaulted defendant as well.  Finally, while the default may
constitute admission of facts, it is not conclusive of legal
allegations, such as whether those facts add up to conduct that
was wrongful.  See, e.g., Bonilla v. Trebol Motors Corp., 150
F.3d 77, 80 (1st Cir. 1998) (defaulted party able to argue
failure to state a claim).

[10] Verified Complaint (doc. no. 49) ¶ 326.

[11] MERS is a private company created by the mortgage banking
industry to establish a centralized, electronic system for
registering the assignments and sales of residential mortgages,
with the goal being the elimination of costly paperwork every
time a loan is sold.  Under the MERS system, the borrower and
the original lender name MERS as the grantee of any instrument
designed to secure the mortgage loan.  The security instrument
is then recorded in the local land records, and the original
lender registers the original loan on MERS's electronic system.
Thereafter, all sales or assignments of the mortgage loan are
accomplished electronically under the MERS system. Taylor, Bean
& Whitaker Mortgage Corp. v. Brown, 276 Ga. 848, 848 n.1 (Ga.
2003)(internal citations omitted).  Absent a "provision in the
mortgage instrument restricting transfer . . . [MERS] may assign

Janet Saunders fell behind on her repayment obligations in late 2009, and her modification requests were denied.[12]  Wells Fargo then set a foreclosure date of December 27, 2010, in response to which plaintiffs moved to enjoin the foreclosure (in addition to seeking damages for other alleged Wells Fargo actions) in state Superior Court.[13]  In separate orders in 2013 and 2014, the Superior Court dismissed all of plaintiffs' claims against Wells Fargo.  Saunders v. Wells Fargo, N.A., No. 218-2010-CV-1457 (N.H. Super. June 12, 2013 and Feb. 6, 2014).  The New Hampshire Supreme Court affirmed those rulings.  Saunders v. Wells Fargo, 2015 WL 11071265 (Feb 12, 2015).  In so doing, the Court described the Saunders's arguments as:  1) Wells Fargo lacked the right to foreclose; 2) MERS's assignment was voidable due to false and forged documentation; 3) the Saunders's were defrauded "right from the beginning of the contract"; and 4) extrinsic fraud voids the Superior Court judgment.

Following the New Hampshire Supreme Court's decision, Wells Fargo again attempted to foreclose.  Four days before the scheduled sale, the Saunders' gifted the property to a friend,

---

its mortgage to another party."  Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 291 (1st Cir. 2013).

[12] Verified Complaint (doc. no. 49) ¶ 328 - 334.

[13] Verified Complaint (doc. no. 49) ¶ 335-339.

Barbara Hagan.  Nevertheless, Wells Fargo purchased the property at foreclosure, and, on March 31, 2016, served an eviction notice on plaintiffs.[14]  Approximately two months later, the Saunders' filed suit in this court, which they voluntarily dismissed within a few months, and again filed suit in January 2017.  The operative five-count amended complaint (doc. no. 82) was filed in August 2017.  The Complaint, though presumably filed in good faith by the pro se plaintiffs, is essentially a "[50-page and originally a 451-page] hodge podge of conclusory allegations about the process of securitizing . . . mortgages and reselling them to investors."  See Lariviere v. Bank of N.Y. as Tr., No. CIV.9-515-P-S, 2010 WL 2399583, at *4 (D. Me. May 7, 2010), report and recommendation adopted, No. CIV.09-515-P-S, 2010 WL 2399556 (D. Me. June 11, 2010).

III.  **Analysis**

Much of the operative Amended Complaint,[15], the Verified Complaint,[16] and plaintiffs' specific allegations have been difficult for the court to comprehend and accordingly, to evaluate for sufficiency under Rule 12(b)(6).  In an abundance

---

[14] Verified Complaint (doc. no. 49) ¶ 559-564

[15] Doc. no. 82.

[16] Doc. no. 49.

of caution, and in deference to plaintiffs' pro se status, the court has taken these claims at face value, and evaluates them as they are named and characterized by the plaintiffs:  claims of 1) conversion; 2) unjust enrichment; 3) intentional infliction of emotional distress; and 4) civil RICO.

### A.    Conversion (Count 1)

"Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Muzzy v. Rockingham Cty. Trust Co., 113 N.H. 520, 523 (1973).  "The gist of the action of conversion is the proof of wrongful deprivation of property to one entitled to possession." Pac. & Atl. Shippers, Inc. v. Schier, 109 N.H. 551, 554 (1969).

Plaintiffs claim that the defendants all played a role in converting the note Janet Saunders signed in 2005.[17]  The basis of their claim is that by "securitizing"[18] the note, the

---

[17] Amended Complaint, (doc. No. 82) ¶¶ 59-60.

[18] Securitization is "the creation of a mortgage-backed security: mortgage loans are purchased from lenders, bundled, and combined to create a single debt instrument.  Interests in this instrument can then be sold to investors who enjoy the benefit of the revenue stream flowing from the mortgage payments." Culhane v. Aurora Loan Servs. Of Nebraska, 708 F.3d 282, 286 n.1 (1st Cir. 2013).

defendants converted Janet Saunders's property.[19]  The Saunders's

conversion claim fails for two reasons:  (1) because the

mortgage -- signed by both plaintiffs -- explicitly states that

it and the note can be sold; and (2) because the execution of a

promissory note does not confer a right of possession to

personal property during the pendency of the underlying debt,

thus rendering a conversion of the note legally impossible under

the facts alleged here.

As to the first point, the mortgage contains the following

provision:  "The Note or a partial interest in the Note

(together with [the Mortgage]) can be sold one or more times

without prior notice to Borrower."[20]  Thus, even if the court

were to accept the dubious proposition that the sale of the note

was a "deprivation of property," it was not "wrongful" according

its own terms.

---

[19] See, e.g., Amended Complaint, (doc. no. 82) ¶¶ 7-12.

[20] As a public document, recorded in the Rockingham County
Registry of Deeds, the court can consider the mortgage as part
of its analysis under Rule 12(b)(6).  See Watterson v. Page, 987
F.2d 1, 3 (1st Cir. 1993) (noting that court can consider, inter
alia, public records in deciding a motion to dismiss).  In
addition, "when a complaint's factual allegations are expressly
linked to — and admittedly dependent upon — a document (the
authenticity of which is not challenged), that document
effectively merges into the pleadings and the trial court can
review it in deciding a motion to dismiss . . . ." Trans-Spec
Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st
Cir. 2008).

Next, and more fundamentally, a conversion claim does not lie under these facts, as courts have repeatedly rejected the Saunders's claim of right to possession of the note or that securitization somehow invalidates the obligation contained therein.  See, e.g., Bukhari v. T.D. Serv. Co., No. 2:10-cv-000578-GMN-PAL, 2010 WL 2762794, *5  (D. Nev. July 13, 2010) ("Plaintiff's conversion claim is without merit.  . . . [H]e was the maker of the promissory note.... As to [him], the promissory note therefore represented an obligation, not property or a right, and it is legally impossible for any  action with respect to the promissory note to constitute  conversion of anything owned by [him]."); Feller v. Indymac Mtg. Servs., No. 09-5720 RJB, 2010 WL 342187, *3 (W.D. Wash. Jan. 26, 2010) (holding that plaintiff failed to state a claim for conversion of a promissory note by her lender because "she has an obligation to pay the bearer of the note, which was IndyMac . . . The note is not property of the Plaintiff."); Rieger v. Wells Fargo  Bank, N.A., No. 3:13-CV-00749 JSC, 2013 WL 3835815, *7 (N.D. Cal. July 23, 2013) (quoting Bukhari and stating "[t]he same is true here"); see also, Andersen v. LaSalle Bank, N.A.,  No. 15-30107-MGM, 2016 WL 3093375 at *5  (D. Mass. June 1, 2016) (Mastroianni, J.); ("While securitization has many consequences, it did nothing to affect Plaintiff's rights and obligations under the Note and Mortgage."); Orellana v. Deutsche Bank Nat'l

Trust Co., No. 12-11982-NMG, 2013 WL 5348596 at *4 (D. Mass. Aug. 30 2013) (Boal, Mag. J.) ("[S]ecuritization by itself does not render a foreclosure invalid. . . . Orellana does not allege that he made unsuccessful attempts to pay down his loan, and fails to cite to any authority in support of his legal theories . . . Accordingly, the securitization of Orellana's note, by itself, does not support a claim for wrongful foreclosure.") (Report and Recommendation adopted by Gorton, J., Sept. 20, 2013). Plaintiffs provide no contrary authority.

On the facts alleged, no conversion occurred as a matter of law. Accordingly, Count 1 must be dismissed.[21]

B.    Unjust enrichment (Count 2)

In Count 2, plaintiffs claim that "every iota of compensation earned by any Party – be it direct fee, referral fee, commission or override – who participated, directly or indirectly, in Plaintiffs' transaction – constituted unjust enrichment."[22]

---

[21]    Even accepting the plaintiffs' incorrect conception of a possessory property right in a promissory note on its own terms, the court also notes that the plaintiffs have not alleged that the note would not have been returned to them had they satisfied their obligation:  paying the associated debt.

[22] Amended Complaint (doc. no. 82) ¶ 67.

"Unjust enrichment is an equitable remedy, found where an individual receives 'a benefit which would be <u>unconscionable</u> for him to retain.'" Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210 (2009)(quoting Kowalski v. Cedars of Portsmouth Condo Ass'n, 146 N.H. 130, 133 (2001)) (emphasis in original). Plaintiffs' claim suffers from two legal defects and must be dismissed.

First, the Saunders's unjust enrichment claim is premised on their conversion claim, which the court has already found to be legally insufficient. <u>See</u> Amended Complaint, doc no. 82, ¶ 66 ("Unjust enrichment has occurred specifically as a result of multiple acts of conversion . . . ."). Again, on the facts alleged, no conversion occurred as a matter of law.

Next, under New Hampshire law, the court "cannot allow recovery under a theory of unjust enrichment when there is a valid, express contract covering the subject matter at hand." Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 669-70 (2013). Here, the parties' relationship is based on, and is governed by, the terms of the mortgage and note, pursuant to which, as previously noted, "[t]he Note or a partial interest in the Note (together with [the Mortgage]) can be sold one or more times without prior notice to Borrower."[23] Thus, not only is there a contract governing the parties' mortgage loan-related

---

[23] <u>See</u> <u>supra</u>, p. 7.

relationship, the express language of that contract undercuts any claim of unconscionability on the part of any other defendant involved in the securitization of the Saunders's mortgage. And while the plaintiffs argue that any purported contract was void <u>ab initio</u> due to the lender's fraudulent failure to disclose that their mortgage would be unlawfully converted through securitization, the court has already concluded that on the facts alleged, there was no conversion as a matter of law.[24]  Count 2 is therefore dismissed.

C.  <u>Intentional infliction of emotional distress (Count 3)</u>

Plaintiffs next claim that the defendants intentionally caused them severe emotional distress by engaging in foreclosure-related actions despite having no legal right to do so.[25]

In order to set forth a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant "by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another." <u>Morancy v. Morancy, 134 N.H. 493, 496 (1991)</u> (quotation omitted). "In determining whether conduct is extreme and outrageous, it is not

---

[24] <u>See</u> <u>supra</u>, p. 9.

[25] Amended Complaint (doc. no. 82) ¶¶ 76-82.

enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice." Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009) (citation and quotations omitted). Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. The Amended Complaint lacks allegations of such conduct.

Despite voluminous hyperbole aimed at the mortgage and banking industries, the Saunders's make no allegations that any of the defendants engaged in any conduct directed toward them beyond customary foreclosure-related activities. As courts in this District have observed, "[t]he ordinary activities of a bank foreclosing on a mortgage do not generally meet the 'extreme and outrageous' standard." Bradley v. Wells Fargo Bank, N.A., 2014 DNH 041, 12 (Barbadoro, J.); see also Julius v. Wells Fargo Bank, N.A., 2017 DNH 084, 16 (holding that initiation of foreclosure proceedings immediately upon notification of borrower's death did not state claim for intentional infliction of emotional distress); Mottram v. Wells Fargo Bank, N.A., 2016 DNH 046, 12-13 (Barbadoro, J.) (finding that sending multiple foreclosure notices to a disabled borrower

was "ordinary foreclosure-related activities" insufficient to support emotional distress claim); Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 135-36 (D.N.H. 2012) (holding that unlawful conduct in relation to mortgage modification and foreclosure did not state emotional distress claim); Beaudette v. Bank of America, Inc., 2012 DNH 015, 4 (DiClerico, J.) (pursuing foreclosure after sending borrower application for mortgage modification held not to provide basis for emotional distress claim).

The plaintiffs have cited no authority for the proposition that the activities of financial institutions involved in the securitization of mortgage instruments or related foreclosure activities can constitute intentional infliction of emotional distress, or even examples of such cases, and the court is unaware of any such authority.  Ultimately, plaintiffs' intentional infliction of emotional distress claim alleges only the "ordinary activities" of foreclosure, Bradley, supra, rather than the "outrageous" conduct required to undergird such a claim.  See Morancy, supra.  Count 3 is therefore dismissed.

D.  RICO (counts 4 and 5)

In counts 4 and 5, plaintiffs allege that the defendants violated the Racketeer Influenced and Corrupt Organizations Act

("RICO"),[26] and conspired to do so, respectively.  To state a
RICO claim, the Saunders's must allege four elements:  "(1)
conduct, (2) of an enterprise, (3) through a pattern, (4) of
racketeering activity".  Giuliano v. Fulton, 399 F.3d 381, 386
(1st Cir. 2005) (internal citations omitted).  The statute
defines "enterprise" as any "legal entity," such as an
"individual, partnership, corporation, association" and "any
other union or group of individuals associated in fact although
not a legal entity."  18 U.S.C. § 1961(4).  Only "racketeering
activities" as enumerated by statute are predicate acts
constituting the statutorily-required pattern under RICO.
Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991).
Also, where, as here, a plaintiff relies on predicate acts
containing fraud, they are subject to Fed. R. Civ. P. 9(b)'s
heightened pleading requirement.  See New England Data Services,
Inc. v. Becher, 829 F.2d 286, 288 (1st Cir. 1987) (stating, in
civil RICO case, that Rule 9(b) has been strictly applied where
fraud lies at the core of the claim).

It is difficult to discern the precise contours of the
plaintiffs' RICO claims, beyond a general attack on the mortgage
and banking industries and the practice of securitizing loans,
which, according to the plaintiffs, resulted in the conversion

---

[26] 18 U.S.C. §§ 1962(c) and 1964.

of their personal property and the theft of their real

property.[27] They conclusorily allege[28] "multiple predicate acts,

including, but not necessarily limited to:"

> 18 U.S.C. 2314 (transportation of stolen goods and
> monies); U.S.C. § 2315 (sale or receipt of stolen
> goods and monies); 18 U.S.C. §1952 (interstate travel
> or transportation in aid of racketeering enterprise);
> 18 U.S.C. § 1956 (laundering of monetary instruments
> ... and much more nuanced than the common man
> understands it to be or has been led to believe); 18
> U.S.C. 1957 (engaging in monetary transactions in
> property derived from specific unlawful activity); 18
> U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1342 (the use
> of mail matter relative to "fictitious" titles); 18
> U.S.C. § 1343 (wire fraud); and 18 U.S.C. § 1346
> (honest services fraud).

But the plaintiffs do not support these legal allegations with

any particularized facts.  Such conclusory assertions do not

satisfy Rule 9(b) in the context of a Rule 12(b) analysis.  See

Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23,

29 (1st Cir. 2004) (observing that claims for fraud typically

must "specify the who, what, where, and when of the allegedly

false or fraudulent representation").

Instead, the plaintiffs allege that the "enterprise" was an

offshoot of the original "conversion" (securitization) of their

"personal property" (the mortgage note), a claim for which, once

---

[27] Amended Complaint (doc. no. 82) ¶ 99.

[28] Amended Complaint (doc. no. 82) ¶ 100.

again, there is no legal authority.[29]  For example, in their
objection to one defendant's motion to dismiss, the plaintiffs
state that "[a] significant fact and one that becomes evident
upon careful review of Plaintiffs' Complaint is that the RICO
claims are more about the conversion than the fraud (except at
the beginning where fraud was the enabling factor)."[30]  But the
"fraud" to which plaintiffs allude is the lender's failure to
inform them that the mortgage would be securitized.  The court
has already found that such failure is not legally actionable.[31]

In addition, plaintiffs allege that "[e]very party who has
had any connection to or used that property in any way, whether
or not it benefitted, did so unlawfully, has unclean hands, has
aided and abetted, and thus has perpetrated conversion."[32]  In
addition to the legal shortcomings of the conversion claim, this
allegation lacks any of the "who, what, where, and when" that
Rule 9(b) requires.  See id.

Plaintiffs further assert that "[m]uch of the unlawful
activity happened at the outset of the subject financial
transaction.  Other members of the enterprise did not come out

---

[29] See supra, p. 9.

[30] Pltff. Obj. (doc. no. 112) at 18.

[31] See supra, pp. 7-11.

[32] Pltff. Obj. (doc. no. 112) at 22.

of the woodwork to a great extent, only surfacing to accomplish
some specific act that furthered along the purpose of the
enterprise."[33]  Similarly, the plaintiffs claim:

> The scheme perpetrated on Plaintiffs is now known
> to be a pretty-much, horrifically and
> reprehensibly so, cookie-cutter scheme to defraud
> borrowers and the Country of its long-held
> property rights and holdings.
>
> . . .
>
> The diversionary tactics and bait and switch
> methods utilized by the managers and operators of
> the enterprise's conduit served to hide the fact
> that, in essence, the subject transaction was
> simple conversion, executed in and by many moving
> parts, which conversion scheme was actually
> fatally flawed by the failure of the
> "contractors" (the mortgage origination network
> affiliates) to build a "contraption" (the note
> and mortgage) whereby the "architects'" scheme to
> defraud borrowers at the closing table, could
> even be executed.[34]

Given their allegations, it is beyond reasonable dispute
that the plaintiffs' entire lawsuit is dependent on their claim
that they were the victims of conversion when they executed the
note and mortgage in February 2005 because they "gave no
permission" to convert those instruments into securities.  But
as previously noted, there is no legal support for their
foundational arguments that the original mortgage loan

---

[33] Amended Complaint (doc. no. 82) ¶ 91.

[34] Amended Complaint (doc. no. 82) ¶¶ 97-98 (emphasis added); id.
¶ 12.

transaction was a "conversion" of their "personal property" (the mortgage and note), or that they were fraudulently induced to enter a transaction that contemplated "securitization" of the underlying debt instruments.  Plaintiffs have cited no case recognizing mortgage securitization as a RICO predicate under these circumstances, and the court's research has revealed none.

Accordingly, plaintiffs' RICO claim must be dismissed, because "[f]ailure to plead predicate acts adequately is enough to sink [a] RICO claim." Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997); see also Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.").  Having failed to adequately plead facts to support their claimed predicate acts, plaintiffs' RICO claim (Count 4) fails as a matter of law.

As a result, plaintiffs' RICO conspiracy claim (Count 5) must also be dismissed.  See Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000) (finding that "if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails.").

## IV.  **Conclusion**

The entirety of the plaintiffs' lawsuit is dependant upon the asserted premise that "[b]orrowers don't makes notes so banks can directly package them and sell them as securities."[35] Plaintiffs cited no legal authority for this proposition, which, as discussed herein has been rejected by other courts. Moreover, the terms of the note and mortgage in this case permitted that very eventuality.  As aptly stated by another court in this Circuit in dismissing an analogous case:

> In the final analysis the [plaintiffs'] complaint against these three defendants is nothing more than a twenty-seven page hodge podge of conclusory allegations about the process of securitizing subprime mortgages and reselling them to investors.  Many people in this country are dissatisfied and upset by that process, but it does not mean that the [plaintiffs] have stated legally cognizable claims against these defendants in their amended complaint.

Lariviere v. Bank of N.Y. as Tr., No. CIV.9-515-P-S, 2010 WL 2399583, at *4 (D. Me. May 7, 2010), report and recommendation adopted, No. CIV.09-515-P-S, 2010 WL 2399556 (D. Me. June 11, 2010).

---

[35] Amended Complaint (doc. no. 82) ¶ 11.

Defendants' motions to dismiss[36] are GRANTED, pursuant to

Fed. R. Civ. P. 12(b)(6).[37]  All other pending motions[38] are

---

[36] Doc. nos. 88, 96, 109, 110, 111, 119, 130 and 139.

[37] The court dismisses plaintiff's Amended Complaint for failure to state a claim for relief, a defense raised by all defendants. Various defendants also raised defenses that applied only to certain subsets of defendants, e.g., attorneys in prior litigation, or a subset of claims, as with a statute of limitations defense.  Many of those defenses are alternative grounds for dismissal of the Amended Complaint, in whole or part, as follows:

> 1.  The plaintiffs are collaterally estopped from re-litigating the propriety of the loan transaction, the validity of the transfer of the note and mortgage assignment and the standing of the "bank defendants" (JPMorgan Chase & Co, Dimon, Bear Stearns, LLC, Wells Fargo & Co., Stumpf, MERSCORP, Arnold and Beckman) to foreclose, as those matters were considered and rejected by the New Hampshire Superior and Supreme Courts.  See Doc. no. 109-1 at 10-11.

> 2.  New Hampshire's three-year statute of limitations bars the plaintiffs' state law claims.  N.H. Rev. Stat. Ann. § 508:4.  Plaintiff's allege that they became aware of the defendants' alleged scheme during state court litigation in November 2013, more than three years before they filed this suit.  See Doc. no. 109-1 at 11-12.

> 3.  New Hampshire's litigation privilege bars plaintiff's claims against the 25 attorney-defendants who were involved in plaintiffs' state-court litigation, or were partners with those attorneys. See Doc. no. 82; Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP, 175 F.3d 14, 15-18 (1st Cir. 1999) (citing New Hampshire law, and noting that New Hampshire's litigation privilege is broad enough to cover civil claims based on attorneys' statements that "are pertinent to the proceedings.").

[38]  Doc. no. 98 (motion to strike); doc. no. 113 (motion to declare and deny); doc no. 127 (motion to strike); doc. no. 152

DENIED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  July 16, 2018

cc:  Janet Saunders, pro se
     Peter Saunders, pro se
     Christopher J. Somma, Esq.
     Nathan Reed Fennessy, Esq.
     Peter G. Callaghan, Esq.
     David S. Frankel, Esq.
     Mark P. Hodgdon, Esq.
     Maxim M.L. Nowak, Esq.
     Fred O. Goldberg, Esq.
     John Fitzgerald Willis, Esq.
     Mary L. Cataudella, Esq.
     Matthew Joseph Delude, Esq.
     Scott C. Owens, Esq.
     Mary Ellen MacDonald, Esq.

---

(motion to strike); doc. no. 158 (motion to strike); doc. no. 159 (motion to strike).